**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>vs.<br><br>ROGELIO HERNANDEZ, JR., a/k/a "Ro,"<br><br>        Defendant. | No. CR 00-4030-MWB<br><br>**MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE** |

———————————

**TABLE OF CONTENTS**

**I. INTRODUCTION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
   **A. Charges, Conviction, Sentencing, and Appeal** . . . . . . . . . . . 3
   **B. The Motion To Vacate Sentence** . . . . . . . . . . . . . . . . . . . 6
   **C. The Evidentiary Hearing** . . . . . . . . . . . . . . . . . . . . . . . 8

**II. LEGAL ANALYSIS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
   **A. Standards For Relief Pursuant To § 2255** . . . . . . . . . . . . . 16
   **B. The "Booker Error"** . . . . . . . . . . . . . . . . . . . . . . . . . 19
   **C. Ineffective Assistance Of Counsel** . . . . . . . . . . . . . . . . . 21
      **1. Applicable standards** . . . . . . . . . . . . . . . . . . . . . . 22
      **2. The "ineffective assistance" at issue here** . . . . . . . . . . . 24
         **a. Failure to assert an "Apprendi challenge"** . . . . . . . 24
         **b. Failure to investigate** . . . . . . . . . . . . . . . . . . . 25
            **i. Arguments of the parties** . . . . . . . . . . . . . . 25
            **ii. Pertinent facts** . . . . . . . . . . . . . . . . . . . . 26
            **iii. Analysis** . . . . . . . . . . . . . . . . . . . . . . . 27
         **c. Failure to challenge sentencing enhancements** . . . . . . 30
            **i. Arguments of the parties** . . . . . . . . . . . . . . 30
            **ii. Analysis** . . . . . . . . . . . . . . . . . . . . . . . 31
         **d. Failure to make a multiple conspiracies argument** . . . 33

|  |  | *i.* | *Arguments of the parties* . . . . . . . . . . . . . . . . | 33 |
|  |  | *ii.* | *Pertinent facts* . . . . . . . . . . . . . . . . . . . . . . | 34 |
|  |  | *iii.* | *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . | 34 |
|  | *e.* | | *Inadequate advice concerning alternatives to trial* . . . . | 36 |
|  |  | *i.* | *Applicable standards* . . . . . . . . . . . . . . . . . . | 36 |
|  |  | *ii.* | *Application of the standards* . . . . . . . . . . . . . | 38 |
| *D.* | *The Remedy* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 44 |
|  | *1.* | | *Arguments of the parties* . . . . . . . . . . . . . . . . . . . . . | 45 |
|  | *2.* | | *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | 47 |
| *E.* | *Certificate Of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . | | | 52 |

*III. CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

This matter comes before the court pursuant to the June 25, 2003, *pro se* Petition Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (docket no. 97) by defendant Rogelio Hernandez, Jr., as supplemented by counsel on January 6, 2006 (docket no. 121), after initial review by the court, and as further supplemented in the course of an evidentiary hearing on the claims presented. In his motion, as supplemented, Hernandez seeks relief from his sentence to 360 months of imprisonment after conviction by a jury on a charge of conspiracy to distribute 500 grams or more of methamphetamine. Hernandez seeks such relief based on a "*Booker* error" in his sentencing and ineffective assistance by his trial and appellate counsel in numerous respects. The parties have briefed the issues presented, the court has held an evidentiary hearing, and the parties have submitted post-hearing briefs on certain issues. Therefore, the court finds that the motion is now ripe for disposition.

# I. INTRODUCTION

## A. Charges, Conviction, Sentencing, and Appeal

In a single-count Indictment handed down on March 24, 2000, defendant Hernandez was charged with conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 846, 841(a), and 841(b)(1)(A)(viii). After he was charged, Hernandez was represented, in quick succession, by the Federal Defender's Office, by an attorney appointed pursuant to the Criminal Justice Act (CJA), then by R. Scott Rhinehart, the first of Hernandez's privately-retained attorneys.

On June 6, 2000, Mr. Rhinehart filed a motion to suppress (docket no. 22) on Hernandez's behalf seeking to suppress statements and evidence obtained from Hernandez in the absence of counsel after he had purportedly asserted his right to an attorney. On August 2, 2000, United States Magistrate Judge Paul A. Zoss filed a Report and Recommendation (docket no. 29) recommending that Hernandez's motion to suppress be denied. Mr. Rhinehart filed Hernandez's objections to the Report and Recommendation on August 3, 2000 (docket no. 30), then filed a motion to withdraw (docket no. 31). By order dated August 4, 2000 (docket no. 32), Mr. Rhinehart was granted leave to withdraw upon the appearance of new counsel and Hernandez's trial was continued. On September 1, 2000, while Hernandez's objections to the Report and Recommendation on his motion to suppress were pending, another privately-retained attorney, Jerry J. Trevino from Corpus Christi, Texas, entered an appearance on Hernandez's behalf. A member of Mr. Rhinehart's firm appeared as local counsel for Mr. Trevino pursuant to local rules governing admissions *pro haec vice*. By order dated September 19, 2000 (docket no. 37), the undersigned accepted Judge Zoss's recommendation that Hernandez's motion to suppress be denied.

After Hernandez's motion for a further continuance was granted, Hernandez proceeded to trial before a jury on December 4 through 7, 2000. Although this case was assigned to the undersigned, owing to a conflict in the undersigned's schedule, this case proceeded to trial before then District Court Judge Michael J. Melloy.[1] Mr. Trevino served as trial counsel. The witnesses at trial consisted of three law enforcement officers, eight alleged co-conspirators, and defendant Hernandez himself. The jury convicted Hernandez and answered a separate interrogatory concerning drug quantity by finding that the offense of conviction involved a conspiracy to distribute 500 grams or more of a mixture or substance containing methamphetamine. *See* Verdict Form (docket no. 65).

Hernandez filed both a motion for a new trial on December 12, 2000 (docket no. 67) and a notice of appeal on December 18, 2000 (docket no. 69). In light of the motion for new trial, the undersigned reassigned the case in its entirety to Judge Melloy by order dated January 2, 2001 (docket no. 71). On January 5, 2001, Judge Melloy denied Hernandez's motion for new trial. Therefore, Hernandez came on for sentencing before Judge Melloy on April 2, 2001.

At his sentencing hearing, Hernandez was again represented by Mr. Trevino. In the course of the hearing, Judge Melloy found that the offense of conviction was committed while Hernandez was on probation for another offense and determined, based on grouping of prior offenses, that Hernandez's criminal history category was III. Over Hernandez's objections, Judge Melloy also imposed enhancements for possession of a dangerous weapon in the course of the offense, Hernandez's leadership role in the offense, and Hernandez's obstruction of justice. The last enhancement was based on Judge Melloy's finding that Hernandez had deliberately testified untruthfully at trial. Judge

---

[1] Judge Melloy has since been elevated to the Eighth Circuit Court of Appeals.

Melloy initially determined the drug quantity for which Hernandez could be held responsible, based on quantities of methamphetamine, marijuana, and cocaine he found to be involved in the conspiracy, to be equivalent to 78,184 kilograms of marijuana, but based on a review of the evidence at trial, reduced the quantity sufficiently to take Hernandez's base offense level down from 38 to 36. With other adjustments, Judge Melloy found that Hernandez's adjusted offense level was 40, which at criminal history category III, meant that Hernandez's Guidelines sentencing range was 360 months to life. Judge Melloy expressed some surprise, having presided at trial, that Hernandez's offense level as calculated in the presentence investigation report (PSIR) was not 43, based on an enhancement for drug trafficking within 1,000 feet of a schoolyard, which would have required a mandatory life sentence, but then noted that, under a change in the Guidelines, the "schoolyard" enhancement could not be imposed unless stated in the indictment and submitted to the jury. On the other hand, Judge Melloy observed that this was, in some respects, "a tragic case," and that he "d[id]n't think that this case need[ed] a 30-year sentence," but that he "d[id]n't have any choice in the matter." *See* Sentencing Transcript at 39-40. Judge Melloy then sentenced Hernandez to 360 months of imprisonment, the bottom of Hernandez's Sentencing Guidelines range.

Hernandez appealed his conviction and sentence to the Eighth Circuit Court of Appeals. *See United States v. Hernandez*, 281 F.3d 746 (8th Cir. 2002). Hernandez was represented on appeal by R. Scott Rhinehart, who had been his counsel at the district court level prior to Mr. Trevino filing his appearance.[2] On appeal, Hernandez asserted that the trial court erred in denying his motion to suppress and that his trial counsel was ineffective

---

[2]Mr. Rhinehart's associate, Mr. Wiberg, who had acted as local counsel for Mr. Trevino, actually presented Hernandez's oral argument on appeal.

for failing to challenge the constitutionality of 21 U.S.C. § 841(b)(1)(A) and (B). *See Hernandez*, 281 F.3d at 748. The appellate court found that Hernandez's allegations of ineffective assistance of trial counsel were not cognizable on direct appeal, and affirmed Hernandez's conviction, rejecting his other arguments. *Id.* at 749.

### B. The Motion To Vacate Sentence

On June 25, 2003, Hernandez filed his *pro se* Petition Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (docket no. 97), and on October 24, 2003, he filed a supporting brief (docket no. 103). By order dated March 8, 2004 (docket no. 107), the court directed the Clerk of Court to appoint counsel to represent Hernandez in this matter. Attorney Pamela A. Wingert was appointed to represent Hernandez (docket no. 108). Notwithstanding appointment of counsel, Hernandez filed a motion for leave to file a *pro se* supplement to his § 2255 motion on May 14, 2004 (docket no. 109) and continued to file *pro se* motions for discovery. On November 18, 2005, Hernandez attempted again to amend his § 2255 motion *pro se* (docket no. 117).

On December 15, 2005, the court entered an Initial Review Order (docket no. 119). In that order, the court construed Hernandez's § 2255 motion to seek relief based on ineffective assistance of counsel, in a number of respects, and based on prosecutorial misconduct. The court found the latter claim was procedurally defaulted, but that Hernandez's § 2255 motion could proceed on his claims of ineffective assistance of counsel. The court also set a briefing schedule on the remaining claims. In a subsequent order dated December 19, 2005 (docket no. 120), the court denied without prejudice Hernandez's *pro se* motions to supplement, but permitted Hernandez to refile any

supplement, should he so desire, after consulting with his counsel, if he did so on or before January 6, 2006.

On January 6, 2006, Hernandez filed, through counsel, a Motion To Supplement Motion Under 28 U.S.C. § 2255 (docket no. 121) clarifying his grounds for relief. On January 17, 2006, Hernandez filed, again through counsel, a Brief In Support of 28 U.S.C. § 2255 Petition (docket no. 122). As supplemented, Hernandez's § 2255 motion sought relief on the following grounds: (1) a "*Booker* error," based on Hernandez's contention that there is a reasonable probability that, but for the court's erroneous belief that the Sentencing Guidelines were mandatory, the court would have imposed a lesser sentence; (2) ineffective assistance of trial counsel in failing to challenge the constitutionality of 21 U.S.C. § 841(a)(1)(A) and (B) to the extent that those provisions permitted the court to make drug quantity determinations in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000); (3) ineffective assistance of trial counsel in failing to investigate the facts of the case, including facts that would have provided the basis to challenge the credibility of the government's witnesses and the falsehoods in their trial testimony; (4) ineffective assistance of trial and appellate counsel in failing to challenge sentencing enhancements for obstruction of justice, possession of a firearm, and drug quantity; and (5) ineffective assistance of trial counsel in failing to assert that the evidence showed multiple conspiracies instead of the single conspiracy with which Hernandez was charged.

On March 1, 2006, the government filed is Memorandum In Support Of Its Court Ordered Response To Defendant's Motion To Vacate, Set Aside Or Correct Sentence Under 28 U.S.C. § 2255 (docket no. 125), in which the government, *inter alia*, conceded that a hearing would be necessary to address the facts and to resolve some of Hernandez's allegations of ineffective assistance of counsel. Hernandez's counsel filed a reply on

March 10, 2006 (docket no. 126), in which Hernandez also requested an evidentiary hearing on the issues he has raised.

On June 13, 2006, in light of the parties' requests, the court set an evidentiary hearing on Hernandez's § 2255 motion, as supplemented by counsel, for July 28, 2006 (docket no. 127). On July 17, 2006, the court entered another order (docket no. 128) directing the United States Marshal to transport Hernandez to Sioux City, Iowa, for the evidentiary hearing. On July 24, 2006, Hernandez's appellate counsel, R. Scott Rhinehart, filed a motion to quash the government's subpoena to appear at the evidentiary hearing (docket no. 129), but the court denied that motion on July 25, 2006 (docket no. 130). Therefore, the stage was set for the evidentiary hearing on Hernandez's § 2255 motion.

## C. The Evidentiary Hearing

At the evidentiary hearing on July 28, 2006, the government was represented by Assistant United States Attorney Janet L. Petersen in Sioux City, Iowa. Defendant Hernandez was represented by Pamela Wingert of Spirit Lake, Iowa. At the hearing, Hernandez testified on his own behalf, and the government presented the testimony of Hernandez's trial and appellate counsel, Mr. Trevino and Mr. Rhinehart, respectively. Based on the evidence presented at the hearing, the court finds as follows.

Hernandez's first privately-retained attorney, Mr. Rhinehart, represented Hernandez at the trial level only through the filing of objections to the magistrate judge's recommended ruling on Hernandez's motion to suppress. Mr. Rhinehart testified, and the court concurs, that proper evaluation of a criminal defendant's case in a district with an "open discovery file" policy, such as the Northern District of Iowa, requires, first, checking the discovery file; second, verifying the contents of the discovery file with the defendant, including determination of the extent and basis for any disagreements with the

evidence or witness statements in the discovery file; third, if counsel is convinced that the defendant will be convicted on the evidence in the discovery file, notwithstanding any contrary evidence that the defendant can generate, discussing the options for pleading either with or without a cooperation plea agreement, including the benefits and risks of each alternative; and fourth, if trial appears to offer some opportunity of acquittal or the defendant insists on going to trial, making sure that the defendant is fully warned of the consequences of going to trial versus pleading with or without a plea agreement, including loss of sentence reductions for acceptance of responsibility, and if the defendant testifies, possible enhancements for obstruction of justice. He testified further, and again the court concurs, that counsel has a duty to explain to a criminal defendant the likely sentencing range under the Sentencing Guidelines if the defendant goes to trial, pleads guilty without a plea agreement (*i.e.*, "straight up"), pleads guilty with a "cooperation" plea agreement, or pleads guilty with a "non-cooperation" plea agreement.

Mr. Rhinehart testified, and the court finds, that he had not reached the point where he could properly assess each of the alternatives for disposition of Hernandez's case before he withdrew, because he simply did not have all of the pertinent information. Mr. Rhinehart testified that when he moved to withdraw, he had really been "pushed out," because the prosecutor notified him that he had previously represented a person whom the prosecutor contended was a cooperating witness against Hernandez, and the prosecutor continued to press Mr. Rhinehart about his "conflict of interest." Mr. Rhinehart testified that he had been present for the purported cooperating witness's debriefing, and did not recall that the purported cooperating witness had identified Hernandez as a participant in any drug-trafficking conspiracy or drug-trafficking activity. On the other hand, Mr. Rhinehart conceded that it was possible that he had not connected anyone identified by the purported cooperating witness as "Ro" with Hernandez. The purported cooperating

witness previously represented by Mr. Rhinehart was never actually called by the government at Hernandez's trial.

The focus of Hernandez's claims of ineffective assistance of trial counsel is the conduct of his second privately-retained attorney, Mr. Trevino of Corpus Christi, Texas, who appeared after Mr. Rhinehart withdrew. At the time that Mr. Trevino took on representation of Hernandez, Mr. Trevino had represented about five federal criminal defendants, none of whom had gone to trial, and had also represented several state criminal defendants, some of whom had gone to trial. Mr. Trevino did not reveal to Hernandez that his would be Mr. Trevino's first federal criminal trial, because Mr. Trevino did not believe that fact was relevant in light of his experience with state criminal trials.[3]

Hernandez testified that he only had one private meeting with Mr. Trevino before his trial, while Hernandez was incarcerated in Fort Dodge, and a brief meeting with Mr. Trevino, the prosecutor, and the judge about an hour-and-a-half before trial. Mr. Trevino confirmed that testimony, but pointed out that the distance between Texas and Iowa had presented some difficulties in communication and case preparation. Hernandez also testified that Mr. Trevino advised him that the "maximum" sentence he faced was about twenty years and that going to trial would not significantly change the likely sentence. Indeed, Hernandez testified that Mr. Trevino informed him that the prosecutor was offering a plea agreement for seven years if he would plead guilty pursuant to a plea agreement that required him to cooperate with the government. Mr. Trevino, however, contends that a reference to a seven-year sentence must have been an example of the

_____

[3]Mr. Trevino testified that he was hampered in his review of what he had or had not done in Hernandez's case, because he had been unable to find his office's file on Hernandez's case. He testified, further, that he believed that the file had been destroyed pursuant to a document disposal policy, because the file was more than five years old.

sentence for a cooperating defendant, because Hernandez's sentence under such circumstances would have depended upon the government making a motion for a reduction for substantial assistance. Both Mr. Trevino and Hernandez testified that Hernandez was not interested in a "cooperation" plea agreement. Hernandez testified that the extent of the exploration of his possible cooperation was that his counsel read through a list of persons identified by the government, and Hernandez said whether or not he knew or knew about those persons.

Hernandez also testified that Mr. Trevino did not advise him that there could be negative consequences if he testified at trial; rather, he contends that Mr. Trevino advised him that the government would use the "same stuff" against him at trial, including his pre-trial statement, which the court had declined to suppress, so that testifying at trial "wouldn't hurt" him. He explained that he testified at trial, because he "trusted" Mr. Trevino's advice.

Even after he was convicted, Hernandez testified that Mr. Trevino told him his sentence could be up to twenty years, but would probably be about fourteen years, not the thirty years to which he was actually sentenced. However, Hernandez conceded that, either at his initial appearance or his arraignment, or both, the court had advised him that the statutory penalty for the crime with which he was charged was ten years to life imprisonment. Under questioning from the court, Hernandez testified that Mr. Trevino never advised him of the possibility of a sentence enhancement for obstruction of justice, if the sentencing judge found that his trial testimony had been untruthful, and in response to questioning by his current counsel, he testified that he first learned of the possibility of a sentence enhancement for obstruction of justice when he read his Pre-Sentence Investigation Report. Under questioning by the court, Hernandez testified that, had he been advised of the possibility of an enhancement of obstruction of justice based on

testifying at trial, he "probably" would have pled guilty, because the obstruction of justice enhancement on top of a fourteen-year sentence "would hurt." Hernandez also testified that Mr. Trevino never put in writing or advised him orally of possible sentencing calculations based on the options of going to trial or pleading guilty, either with or without a cooperation plea agreement.

Mr. Trevino did not dispute most of Hernandez's testimony on the nature of his advice about sentencing or going to trial. However, he did state that he "believed" that he had advised Hernandez that if he went to trial and was convicted, his sentence could be a "minimum" of twenty years. Although he testified that he was "fairly certain" that he had explained the options of going to trial and pleading guilty with or without a cooperation agreement, he had no specific recollection of discussing the specific implications for sentence enhancements or reductions that might arise under each scenario. He also testified that his best advice would have been for Hernandez to plead guilty, based on his evaluation of the discovery file and the other circumstances of Hernandez's case, but that he believed that Hernandez really wanted to go to trial to contest certain factual issues, including the government's characterization of his role in the offense and whether he was involved in a drug conspiracy at all, and that he wanted "a trial lawyer" who would really "fight it out." He also confirmed Hernandez's version of the extent to which he explored "substantial assistance" with Hernandez by testifying that he had only done so to the extent of asking Hernandez if he was willing to share information with the government, but that Hernandez didn't want to "go that route" and that he had not had recent contact with most of the people on the government's list of persons against whom he might provide information. Mr. Trevino also conceded that any impression that Hernandez had about his likely sentence probably came from Mr. Trevino's statements to Hernandez. Even after Hernandez was convicted, Mr. Trevino testified that he had told

Hernandez that his sentence was likely to be about fourteen years, because he liked to try to be "optimistic" with defendants under such circumstances.

In response to a question from the court, Mr. Trevino opined that, on a scale of one to ten for expertise with the United States Sentencing Guidelines, with ten being expert, he was probably a six. Still more specifically, Mr. Trevino acknowledged that he had only discussed Hernandez's possible sentence, whether he went to trial or pleaded guilty, in "generalities," explaining that what he meant by "generalities" was that he based his sentencing estimates on "the totality of the case," including a comparison with sentences of alleged co-conspirators and Hernandez's alleged role as a leader in the conspiracy, as indicated by the government's discovery file. The "general" estimate he says he gave Hernandez was about twenty years. He also conceded that any sentencing calculations that he gave Hernandez would have been in terms of years, rather than in terms of offense levels and criminal history points, because it was easier for defendants to comprehend such estimates and because defendants tended to be interested only in the "bottom line." Mr. Trevino also conceded that, despite his professional judgment that it would have been best for Hernandez to plead guilty, even without a plea agreement, rather than to go to trial, he never told Hernandez that it was his best judgment that he would be convicted if he went to trial and that he had never strongly "leaned on" Hernandez to plead guilty. Mr. Trevino also conceded that, with the benefit of hindsight, he now believes he could and should have "leaned on" Hernandez harder to plead guilty.

As to questions of trial strategy, both Mr. Rhinehart and Mr. Trevino testified that the government had prepared a "tree" or "chart" of the organization of the supposed drug conspiracy with Hernandez at the very top, and that Hernandez vehemently disputed that characterization of his role in any conspiracy—indeed, Hernandez disputed that he was involved in *any* conspiracy. Hernandez identified several key issues that he brought to

Mr. Trevino's attention, but that Mr. Trevino did not follow up on or pursue those issues. One such issue was misidentification of Hernandez as the "brother" of Ramon Hernandez, another drug dealer, and that he was "from California." Hernandez asserted that he was no relation of Ramon—indeed, that he had only known who Ramon was and had only seen him occasionally at some "Mexican dances" prior to the time that they were both incarcerated in Fort Dodge. He also testified that Ramon had indicated his willingness to testify at Hernandez's trial that Hernandez was not involved in drug-trafficking with Ramon. Another issue was his belief that his employment records and other records, including bank ATM statements, would show that he was in Mexico for vacations in September and December of 1997, during the alleged conspiracy and at specific times that certain cooperating witnesses said certain conduct in furtherance of the conspiracy occurred.[4] He also complained that Mr. Trevino did not fully examine the criminal histories of various cooperating witnesses. Finally, he testified that he asked Mr. Trevino to pursue a "multiple conspiracies" theory, which was not done.

Mr. Trevino agreed that each of these issues had been brought to his attention, with the exception that he did not recall that Hernandez raised the issue of single or multiple conspiracies before or during trial, but that he did not believe that any of the issues he remembers Hernandez raising would have made a difference at trial. Mr. Trevino considered Ramon Hernandez's criminal activity sufficiently unsavory that his testimony was unlikely to help Hernandez; that Hernandez had been out of the country during too little of the time encompassed by the alleged conspiracy to disprove his involvement in that

_____

[4]Hernandez did not offer any such records into evidence in support of his § 2255 motion, however.

conspiracy; and that criminal histories of cooperating witnesses and the evidence of the scope of the alleged conspiracy came out at trial.

Mr. Trevino also corroborated Hernandez's testimony that Mr. Trevino had provided Hernandez with copies of several discovery motions and motions in limine during his trip to Fort Dodge for their only face-to-face visit. Although Mr. Trevino testified that he learned from the prosecutor that most of the information he was seeking in discovery motions would be available in the "open" discovery file, he could not confirm whether his discovery motions were eventually withdrawn, for example, by a letter to the court. He testified that he also was not sure why there had been no ruling on his motions in limine.

After Hernandez was convicted and sentenced, Hernandez again retained Mr. Rhinehart for purposes of pursuing an appeal. Mr. Rhinehart testified that he attempted to "winnow down" potential issues for appeal to the very best ones. Hernandez did not dispute that Mr. Rhinehart advised him that his "best" issue on appeal concerned denial of his motion to suppress. Mr. Rhinehart also testified that he was concerned to try to preserve any "*Apprendi* issues" and "ineffective assistance of counsel" issues. Mr. Rhinehart testified, and Hernandez confirmed, that Mr. Rhinehart sent Hernandez a copy of the draft of an appellate brief for Hernandez's comment. Mr. Rhinehart testified that he did not receive any direction from Hernandez to pursue additional issues, and Hernandez did not dispute that testimony. Mr. Rhinehart testified that his communications with Hernandez were hampered, because Hernandez was moved, apparently more than once, by the Bureau of Prisons during the time that his appeal needed to be filed and while his appellate brief was being drafted. Nevertheless, Mr. Rhinehart and Hernandez agreed that they conferred at least once by telephone about the issues and strategy for appeal.

The court asked the parties at the end of the evidentiary hearing whether the record fairly presented a claim of ineffective assistance of trial counsel in failing to advise

Hernandez adequately about the benefits and consequences of going to trial versus pleading guilty, either with or without a plea agreement, in addition to the grounds for relief stated in Hernandez's June 25, 2003, *pro se* § 2255 motion, as supplemented by counsel. The government conceded that the record did fairly present that issue. At the end of the evidentiary hearing, the court also raised the issue of the proper remedy, should the court grant relief on any of the grounds Hernandez asserted, and the government requested the opportunity to brief the remedies issue. The court set a briefing schedule on remedies issue, which it later confirmed in a written order (docket no. 134). In that order, the court also asked the parties to brief the question of whether or not any resentencing granted as relief on Hernandez's § 2255 motion would be under the mandatory United States Sentencing Guidelines in effect at the time that Hernandez was originally sentenced.

At the conclusion of the evidentiary hearing, the parties both declined the opportunity to make oral arguments on Hernandez's § 2255 motion, so that this matter would be deemed fully submitted upon completion of the post-hearing briefing schedule. The government filed its post-hearing brief on remedies issues on August 11, 2006 (docket no. 135). Hernandez filed his brief on those issues on August 25, 2006 (docket no. 137). Therefore, this matter is now fully submitted.

## II. LEGAL ANALYSIS

### A. Standards For Relief Pursuant To § 2255

Turning to the legal analysis of Hernandez's claims, in light of the evidence presented at the evidentiary hearing and the other evidence in the record, the court notes, first, that 28 U.S.C. § 2255 provides as follows:

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right to be

released upon the ground [1] that the sentence was imposed in violation of the Constitution or laws of the United States, or [2] that the court was without jurisdiction to impose such sentence, or [3] that the sentence was in excess of the maximum authorized by law, or [4] is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255; *Bear Stops v. United States*, 339 F.3d 777, 781 (8th Cir. 2003) ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). Thus, a motion pursuant to § 2255 "is 'intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" *United States v. Wilson*, 997 F.2d 429, 431 (8th Cir. 1993) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)); *accord Auman v. United States*, 67 F.3d 157, 161 (8th Cir. 1995) (quoting *Wilson*). On the other hand,

Section 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of cause and prejudice, *United States v. Frady*, 456 U.S. 152, 167-68, 102 S. Ct. 1584, 1594-95, 71 L. Ed. 2d 816 (1982), or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice. *See United States v. Smith*, 843 F.2d 1148, 1149 (8th Cir. 1988) (*per curiam*).

*Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (*per curiam*); *accord Johnson v. United States*, 278 F.3d 839, 844 (8th Cir. 2002) ("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998), with citations omitted).

The "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim may include "ineffective assistance of counsel." *See Becht v. United*

17

*States*, 403 F.3d 541, 545 (8th Cir. 2005). Otherwise, "[t]he Supreme Court recognized in *Bousley* that 'a claim that "is so novel that its legal basis is not reasonably available to counsel" *may* constitute cause for a procedural default.'" *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (quoting *Bousley*, 523 U.S. at 622, with emphasis added, in turn quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)). "Actual prejudice" requires a showing that the alleged error "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" *Johnson*, 278 F.3d at 844 (quoting *United States v. Frady*, 456 U.S. 152, 170 (1981), and explaining, further, that the movant must show that there is a substantial likelihood that, absent the error, a jury would have acquitted him of the charged offense). To establish "actual innocence," as an alternative way to resuscitate a procedurally defaulted claim, "'petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.'" *Id.* (quoting *Bousley*, 523 U.S. at 623). "'This is a strict standard; generally, a petitioner cannot show actual innocence where the evidence is sufficient to support a [conviction on the charged offense].'" *Id.* (quoting *McNeal v. United States*, 249 F.3d 747, 749-50 (8th Cir. 2001)).

The Eighth Circuit Court of Appeals will review the district court's decision on a § 2255 motion *de novo*, regardless of whether the district court's decision grants or denies the requested relief. *Compare United States v. Hilliard*, 392 F.3d 981, 986 (8th Cir. 2004) ("We review the district court's decision to grant or deny relief on a petitioner's ineffective assistance of counsel claim de novo.") (citing *United States v. White*, 341 F.3d 673, 677 (8th Cir. 2003)); *with United States v. Hernandez*, 436 F.3d 851, 854 (8th Cir. 2006) ("'We review de novo the district court's denial of a section 2255 motion.'") (quoting *Never Misses A Shot v. United States*, 413 F.3d 781, 783 (8th Cir. 2005)).

However, "[a]ny underlying fact-findings are reviewed for clear error.'" *Hernandez*, 436 F.3d at 855 (quoting *United States v. Davis*, 406 F.3d 505, 508 (8th Cir. 2005)).

With these standards in mind, the court turns to analysis of each of Hernandez's claims for § 2255 relief.

### B. The "Booker *Error*"

Hernandez's first claim for § 2255 relief is an alleged "*Booker* error," based on Hernandez's contention that there is a reasonable probability that, but for the court's erroneous belief that the Sentencing Guidelines were mandatory, the court would have imposed a lesser sentence. This is apparently a contention that his "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255 (stating this and other grounds for relief); *Bear Stops*, 339 F.3d at 781 ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States.").

Hernandez concedes that he did not raise this issue on direct appeal, but contends that his failure to do so means only that the claim is now subject to "plain error" review. In the brief filed by counsel on his behalf, Hernandez argues that there is no dispute that it is plain error for the district court to sentence a defendant under the mandatory guidelines regime and no dispute that substantial rights are thereby affected. His contention that there is at least a reasonable probability that his sentence would have been lower, if the court had not entertained the erroneous belief that the Sentencing Guidelines were mandatory, is based on comments made by the sentencing judge that a 360-month sentence was not appropriate in this case, but that the judge had "no choice in the matter." He contends that, in the interests of justice, a shorter sentence should be imposed. In response, the government contends that *United States v. Booker*, 543 U.S. 220 (2005), is

19

not applicable to cases that became final before the "new rule" in *Booker* was announced on January 12, 2005.

Hernandez bases his contention that this claim, which was not raised on direct appeal, is subject to "plain error" review when raised in a § 2255 motion on his reading of *United States v. Pirani*, 406 F.3d 543 (8th Cir. 2005). The *Pirani* decision, however, stands for no such proposition. Rather, the *Pirani* decision stands for the proposition that errors not properly preserved *at trial* are reviewed only for "plain error" *on direct appeal*, and that this standard of review "applies even when . . . the error results from a change in the law that occurred *while the case was pending on appeal." See Pirani*, 406 F.3d at 549 (emphasis added). In contrast, in the circumstances presented here, Hernandez's subsequent collateral attack, via a § 2255 motion, Hernandez cannot pursue his "*Booker* claim" unless he can establish "cause and prejudice" for failure to pursue the claim on direct appeal. *See Johnson*, 278 F.3d at 844 (("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley*, 523 U.S. at 622, with citations omitted); *Ramey*, 8 F.3d at 1314 (§ 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of "cause and prejudice," or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice).

Not withstanding his assertion that "plain error" review is applicable, Hernandez also appears to assert that he has shown "cause and prejudice" for his procedural default of this claim, which was not raised on direct appeal, because he argues that the result in his case would have been different if his counsel had raised the "*Booker* error" in a timely manner. *See Becht*, 403 F.3d at 545 ("ineffective assistance of counsel" may constitute the "cause and prejudice" that must be shown to resuscitate a procedurally defaulted

claim). The court will consider the merits of Hernandez's "*Booker* claim," assuming for the sake of argument that counsel's failure to raise the issue on direct appeal constitutes the necessary "cause and prejudice" to overcome Hernandez's procedural default of the claim.

Upon consideration of the merits of that claim, however, the court agrees with the government that Hernandez's claim of a "*Booker* error" is foreclosed. The Eighth Circuit Court of Appeals has held that *Booker* does not apply retroactively to cases on collateral review, such as Hernandez's motion for § 2255 relief. *See Never Misses a Shot v. United States*, 413 F.3d 781 (8th Cir. 2005) (*per curiam*). Therefore, Hernandez is not entitled to any relief on his claim of a "*Booker* error."

### C. Ineffective Assistance Of Counsel

The other claims on which the court permitted Hernandez's motion for § 2255 relief to proceed following initial review as well as the claim that the government conceded was fairly presented by the record during the evidentiary hearing are based on the alleged ineffective assistance of Hernandez's trial and appellate counsel. The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. CONST. AMEND. VI. Thus, a criminal defendant is constitutionally entitled to the effective assistance of counsel both at trial and on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003). By the same token, "ineffective assistance of counsel" could result in the imposition of a sentence in violation of the Constitution or laws of the United States. 28 U.S.C. § 2255; *Bear Stops*, 339 F.3d at 781 ("To prevail on a § 2255 motion, the petitioner must demonstrate a violation of the Constitution or the laws of the United States."). The Eighth Circuit Court

of Appeals has expressly recognized that a claim of ineffective assistance of counsel should be raised in a § 2255 proceeding, rather than on direct appeal, because it often involves facts outside of the original record. *See United States v. Hughes*, 330 F.3d 1068, 1069 (8th Cir. 2003) ("When claims of ineffective assistance of trial counsel are asserted on direct appeal, we ordinarily defer them to 28 U.S.C. § 2255 proceedings."). Thus, whether or not Hernandez is entitled to relief on his § 2255 motion turns on whether or not he can satisfy the standards applicable to his "ineffective assistance" claims.

### 1. Applicable standards

As the Eighth Circuit Court of Appeals has explained, "'The applicable law here is well-established: post-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense.'" *United States v. Ledezma-Rodriguez*, 423 F.3d 830, 836 (8th Cir. 2005) (quoting *Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001), in turn citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)); *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) ("To prove that his counsel rendered ineffective assistance in violation of the Sixth Amendment, [the movant] must satisfy the two prong test outlined in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)," which requires the movant to "show that his counsel's performance was deficient" and that he was "prejudice[d]").

The "deficient performance" prong requires the movant to "show that his 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 687). That showing can be made by demonstrating that counsel's performance "'fell below an objective standard of reasonableness.'"

22

*Wiggins v. Smith*, 539 U.S. 510, 522 (2003) (quoting *Strickland*, 466 U.S. at 688). There are two substantial impediments to making such a showing, however. First, "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). Second, "[t]here is a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.* (quoting *Strickland*, 466 U.S. at 689); *Davis*, 423 F.3d at 877 ("To satisfy this prong [the movant] must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance."). If the movant fails to show deficient performance by counsel, the court need proceed no further in its analysis of an "ineffective assistance" claim. *United States v. Walker*, 324 F.3d 1032, 1040 (8th Cir. 2003).

Even if counsel's performance was "deficient," the movant must also establish "prejudice" to overcome the presumption of reasonable professional assistance. *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. To satisfy this "prejudice" prong, the movant must show "'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different . . . [,] a reasonable probability [meaning] a probability sufficient to undermine confidence in the outcome.'" *Rice*, 449 F.3d at 897 (again quoting *Strickland*, 466 U.S. at 694); *Davis*, 423 F.3d at 877 (same). Thus, "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Pfau v. Ault*, 409 F.3d 933, 939 (8th Cir. 2005) (quoting *Strickland*, 466 U.S. at 693). Although the two prongs of the "ineffective assistance" analysis are described as sequential, courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice." *Boysiewick v. Schriro*, 179 F.3d 616, 620 (8th Cir. 1999) (citing *Pryor v. Norris*, 103 F.3d 710 (8th Cir. 1997).

Hernandez contends that his trial and appellate counsel were ineffective in numerous ways. The court will consider Hernandez's allegations in turn.

### 2. The "ineffective assistance" at issue here

### a. Failure to assert an "**Apprendi** challenge"

Hernandez's first claim of ineffective assistance of counsel is based on his trial counsel's failure to challenge the constitutionality of 18 U.S.C. § 841(a)(1)(A) and (B) to the extent that those provisions permitted the court to make drug quantity determinations that affected the length of his sentence in violation of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). He contends that, even though the decision in *Apprendi* was brought to counsel's attention before sentencing, counsel still did not specifically raise a challenge to findings of drug quantities by the court based on the court's credibility determinations. Thus, he contends that he was sentenced on the basis of drug quantities that were not proved to a jury beyond a reasonable doubt. He argues that the constitutional issue should have been apparent at the time of sentencing and that his counsel's failure to raise it prejudiced him, because a higher sentence was imposed.

In response, the government points out that *Apprendi* held only that jury determination is required for facts that increase a defendant's maximum *statutory* sentence. The government asserts that the jury in Hernandez's case made the necessary factual determination beyond a reasonable doubt by determining, in response to a separate interrogatory, that Hernandez's offense involved 500 grams or more of a methamphetamine mixture, thereby establishing Hernandez's maximum *statutory* sentence as life imprisonment. Where Hernandez was actually sentenced to a shorter term of imprisonment, 360 months, the government contends that there was no *Apprendi* violation, and no prejudice to Hernandez from counsel's conduct.

This ground affords Hernandez no relief. First, the government is correct that *Apprendi* did not, on its face, address judicial fact-finding that establishes the maximum *Guidelines sentencing range*, because *Apprendi* was cast only in terms of a constitutional requirement for jury determination of facts that establish the maximum *statutory* penalty. *See Apprendi*, 530 U.S. at 490. The decision in *Blakely v. Washington*, 542 U.S. 296 (2004), which applied *Apprendi* to invalidate that part of Washington State's sentencing scheme that allowed a judge to find facts increasing the defendant's mandatory guidelines sentence, had not been handed down at the time of Hernandez's sentencing. The court cannot find that counsel was constitutionally ineffective in failing to raise Hernandez's argument concerning judicial fact-finding under mandatory Sentencing Guidelines, based on *Apprendi*, because "[w]hile the Constitution guarantees criminal defendants a competent attorney, it 'does not insure that defense counsel will recognize and raise every conceivable constitutional claim.'" *Anderson v. United States*, 393 F.3d 749, 754 (8th Cir. 2005) (quoting *Engle v. Isaac*, 456 U.S. 107, 134 (1982)). Thus, this claim fails on the first prong of the "ineffective assistance" analysis, because counsel's performance was not "deficient." *See Ledezma-Rodriguez*, 423 F.3d at 836 (to prove an "ineffective assistance" claim, the movant must first show that counsel's performance was "deficient"); *Davis*, 423 F.3d at 877 (same). Because there was no "deficient performance," the court need not consider the "prejudice" prong for this "ineffective assistance" claim. *Walker*, 324 F.3d at 1040.

Hernandez is not entitled to any relief on this claim.

### b.    *Failure to investigate*

*i.    Arguments of the parties*. Hernandez's next claim of ineffective assistance of counsel is that trial counsel failed to investigate the facts of the case, including facts that would have provided the basis to challenge the credibility of the government's witnesses

and the falsehoods in their trial testimony. In the brief filed by his counsel, Hernandez contends that the government's case relied largely upon the testimony of informants, so that a thorough understanding of the facts of the case was essential to effective cross-examination of those witnesses. Hernandez points out that counsel came to Iowa from Texas only shortly before the trial and spent "minimal" time with Hernandez, consisting of a single face-to-face meeting. Hernandez also asserts that counsel never reviewed his notes on the discovery file with Hernandez, so that Hernandez did not have the opportunity to help prepare counsel to cross-examine witnesses on specifics of their testimony. Hernandez contends that he also had information about his trips in and out of the country and his work records, which would have cast doubt on or contradicted the witnesses' versions of the timing of certain events and the criminal activities that he had allegedly engaged in. Hernandez also complains that counsel did not call any other witnesses to support Hernandez's version of events, even though such witnesses were available and willing to testify. The result, Hernandez contends, was that the informants' versions of events went largely unchallenged at trial, to his prejudice. The government responded to this claim by conceding that an evidentiary hearing was required to determine what counsel did or did not do.

  *ii.*   *Pertinent facts*. From evidence presented at the evidentiary hearing, the court finds the following pertinent facts. Mr. Trevino conceded that the issues that Hernandez now raises concerning investigation of grounds for impeachment of cooperating witnesses had been brought to his attention, including Hernandez's contention that he was out of the country during part of the period of the alleged conspiracy, and more specifically, that he was out of the country at times when that the cooperating witnesses testified that he had engaged in certain conduct in furtherance of the conspiracy. However, Mr. Trevino did not believe that investigation of Hernandez's contentions would make a

difference at trial. Mr. Trevino considered Ramon Hernandez's criminal activity sufficiently unsavory that his testimony was unlikely to help Hernandez; that Hernandez had been out of the country during too little of the time encompassed by the alleged conspiracy to disprove his involvement in that conspiracy; and that criminal histories of cooperating witnesses and the evidence of the scope of the alleged conspiracy came out at trial.

  *iii.*  ***Analysis***. On the "deficient performance" prong of the "ineffective assistance" analysis, the Eighth Circuit Court of Appeals has repeatedly stated that "'[r]easonable performance of counsel includes an adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories.'" *Lyons v. Luebbers*, 403 F.3d 585, 594 (8th Cir. 2005) (quoting *Foster v. Lockhart*, 9 F.3d 722, 726 (8th Cir. 1993)). As a corollary of that principle, courts have also recognized that "'[s]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'" *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). The strength of the presumption that counsel's performance was reasonable "turns on the adequacy of counsel's investigation." *White v. Roper*, 416 F.3d 728, 732 (8th Cir. 2005). Where, for example, counsel's investigation was "too superficial" to reveal the strengths or weaknesses of testimony supporting the government's or the defendant's case, or to discover evidence providing powerful support for the defendant's version of events, "the presumption of sound trial strategy founders . . . on the rocks of ignorance." *Id.*

  Here, the court cannot find that Mr. Trevino's conduct was "deficient" in the way alleged here. Mr. Trevino had investigated the discovery file, and was aware of grounds to impeach the cooperating witnesses, and also investigated Ramon Hernandez's criminal history sufficiently to gauge his perceived credibility for a jury and his value otherwise as

a witness in support of Hernandez's contention that he was not involved in a conspiracy with Ramon. The court cannot find that his investigation was "too superficial" to reveal the strengths or weaknesses of the government's evidence. *Cf. White*, 416 F.3d at 732 (an investigation that is "too superficial" to reveal the strengths or weaknesses of the government's case is deficient).

More specifically, counsel's decision not to call Ramon Hernandez as a witness, after evaluating his value as a witness, clearly fell within the realm of sound trial strategy to which a presumption of soundness applies. *Rice*, 449 F.3d at 897 ("'Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.'") (quoting *Strickland*, 466 U.S. at 690). Hernandez has not overcome that presumption. Similarly, counsel's decision not to attempt to impeach the cooperating witnesses on some few details based on evidence that Hernandez was in Mexico at the times that the witnesses asserted that certain events occurred is not without a reasonable strategic basis. Hernandez *was* present in this country for the vast majority of the time that he was alleged to be a member of the conspiracy, and the dates of his conduct alleged by the cooperating witnesses were not so specific that showing Hernandez's absence at a certain time would necessarily have demonstrated that the cooperating witnesses were wrong about *whether* such events occurred, as opposed to merely wrong about precisely *when* such events occurred. The court notes that Hernandez has still not produced the evidence from his employment records and ATM transactions that he contends that counsel should have discovered to show when he was out of the country. Finally, Hernandez conceded that his counsel did bring up the cooperating witnesses' plea agreements during cross examination. Therefore, this "ineffective assistance" claim fails on the "deficient performance" prong of the analysis.

Even if counsel's investigation was somehow "deficient," a defendant seeking § 2255 relief must still show "prejudice." *Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877; *see also White*, 416 F.3d at 732 (also requiring proof of "prejudice" on an "ineffective assistance" claim based on deficient performance); *Lyons*, 403 F.3d at 594 (same). To demonstrate "prejudice" in the context of a claim of failure to investigate, the defendant cannot rely on general allegations of what a proper or reasonable investigation would have revealed, but must show specifically what would have been revealed by further investigation and how the further evidence would have made a different outcome to the trial a reasonable probability. *See, e.g., Palmer v. Clarke*, 408 F.3d 423, 445-46 (8th Cir. 2005) (the defendant could not show "prejudice," because he failed to demonstrate specifically what further evidence would have been uncovered and how it would have affected the outcome of the trial, and instead, rested on "general allegations," which the court held were insufficient); *Nooner v. Norris*, 402 F.3d 801, 810 (8th Cir. 2005) (the movant failed to demonstrate "prejudice" on his claim of failure to investigate, because the movant failed to identify what evidence of "psychiatric and mental problems" was not presented to the jury, and the movant offered no additional details).

Hernandez has not made the necessary showing on the "prejudice" prong. He has no more than speculation to support his contention that Ramon Hernandez's testimony would have made a different outcome likely, and indeed, the court concurs in counsel's view that offering the testimony of such a witness could have hurt Hernandez more than it would have helped. While Hernandez attempted to identify during the evidentiary hearing the specific aspects of the testimony of cooperating witnesses that his absences from the country would have impeached, the court finds, again, that Hernandez *was* present in this country for the vast majority of the time that he was alleged to be a member of the conspiracy and that the dates of his conduct alleged by the cooperating witnesses

were not so specific that showing Hernandez's absence at a certain time would necessarily have demonstrated that the cooperating witnesses were wrong about *whether* such events occurred, as opposed to merely wrong about precisely *when* such events occurred. The court notes that Hernandez has still not produced the evidence from his employment records and ATM transactions that he contends that counsel should have discovered to show when he was out of the country. Thus, the court cannot say that, but for the "deficient" conduct of counsel, if any, that Hernandez has shown either what specific evidence would have made a difference or that a different outcome to the trial in light of that evidence was a reasonable probability. *See, e.g., Palmer*, 408 F.3d at 445-46. Thus, this claim also fails on the "prejudice" prong.

Therefore, Hernandez is not entitled to relief on this claim of ineffective assistance of counsel.

### c.    *Failure to challenge sentencing enhancements*

*i.    Arguments of the parties*. Hernandez's next claim of "ineffective assistance" is that trial and appellate counsel failed to challenge sentencing enhancements for obstruction of justice, possession of a firearm, and drug quantity. In the brief filed by his counsel, Hernandez argues that, although trial counsel objected to each of these enhancements, he failed to object on the basis that the Constitution requires that the jury make the necessary factual determinations, but that the jury had not done so in his case. In other words, Hernandez contends that the jury had not determined that his trial testimony amounted to perjury, that he possessed a firearm in connection with his drug enterprise, or that the conspiracy involved the specific quantities of controlled substances upon which his sentence was based, including controlled substances other than the methamphetamine mixture upon which the conspiracy charge was based. Hernandez also contends that counsel filed motions in limine regarding evidence of drugs other than

methamphetamine, but failed to secure a ruling on those motions, thus failing to preserve the error for appeal.

The government contends that, to the extent that these claims are really allegations of "*Booker* errors," they should be rejected for the same reason that *Booker* is inapplicable to Hernandez's collateral attack on his sentence for failure to depart from the Guidelines minimum sentence. The government also contends that counsel did challenge each of the enhancements at sentencing, but that the sentencing judge properly found sufficient factual basis for each enhancement. The government does concede, however, that the question of whether counsel filed any motions in limine to exclude evidence of drugs other than methamphetamine, but failed to secure rulings on those motions, requires an evidentiary hearing.

*ii.*     *Analysis*. The court finds, first, that counsel did object during Hernandez's sentencing hearing to each of the enhancements that Hernandez now contends should have been challenged. *See* Sentencing Transcript at 12-20 (argument and ruling on the firearm enhancement); *id*. at 20-22 (argument and ruling on obstruction of justice enhancement); *id*. at 22-32 (argument and ruling on drug quantity). Thus, counsel was not "deficient" in failing to challenge the enhancements at all.

The court must also agree with the government that, as presented in Hernandez's counsel's brief, the issue of failure to challenge the enhancements on the basis that the jury had not determined the factual basis for those enhancements is a "backdoor" claim of a "*Booker* error." However, as previously explained, *Booker* is not applicable to cases, such as this one, in which the conviction is final and the case is before the court only on collateral review. *See Never Misses a Shot v. United States*, 413 F.3d 781 (8th Cir. 2005) (*per curiam*).

31

That leaves only Hernandez's claim that counsel failed to challenge admission of evidence or failed to obtain rulings on his challenge to admission of evidence at trial concerning controlled substances other than the methamphetamine identified in the conspiracy charge and that counsel failed to challenge use of quantities of controlled substances other than methamphetamine to enhance his sentence. The court finds that Hernandez's trial counsel filed various motions for discovery and one motion in limine (docket no. 44),[5] but that motion in limine did *not* expressly seek to exclude evidence of controlled substances other than methamphetamine. Instead, that motion in limine sought to bar the government and witnesses "from making any direct or indirect reference whatsoever at trial before the jury of any other extraneous crimes or misconduct by the accused or other defense witnesses other than those specifically set out in the Indictment." Defendant's Motion In Limine (docket no. 44), 1. To the extent that the language of the motion in limine was intended to seek exclusion of evidence of Hernandez's or cooperating witnesses' conduct relating to controlled substances other than the methamphetamine charged in the Indictment, it was a remarkably obscure way of addressing that issue. The court has reviewed the transcript of the trial, at which the undersigned was not the presiding judge, and the court finds no record of any objection by trial counsel to evidence of controlled substances other than methamphetamine.

Even so, to the extent that Hernandez contends that counsel was ineffective in failing to obtain a ruling on his supposed pretrial motion in limine seeking to exclude evidence of controlled substances other than methamphetamine or in failing to challenge admission at trial of evidence of controlled substances other than methamphetamine, the

---

[5] Hernandez's counsel also filed a request for notice of the government's intent to use Rule 404(b) evidence. *See* docket no. 46.

court has considerable doubt that counsel's performance could be considered "deficient," and even assuming, without deciding, that counsel's performance was "deficient" in failing to lodge such objections, this claim of ineffective assistance of counsel fails on the "prejudice" prong. *See Boysiewick*, 179 F.3d at 620 (courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice") (citing *Pryor*, 103 F.3d 710). Evidence that the conspiracy from time to time involved controlled substances other than the methamphetamine charged in the indictment was inextricably intertwined with evidence of methamphetamine trafficking and tended to prove the existence of the conspiracy. As such, that evidence was not "extrinsic" and did not implicate Rule 404(b) of the Federal Rules of Civil Procedure concerning other "bad acts." *See, e.g., United States v. Adams*, 401 F.3d 886, 899-900 (8th Cir. 2005) (distinguishing "extrinsic" "bad acts" evidence within the meaning of Rule 404(b) from "intrinsic" evidence). Nor was such evidence unduly prejudicial in this case, where it is apparent that the majority of the evidence presented related to a conspiracy to distribute methamphetamine, the charged controlled substance, rather than other controlled substances. *See* FED. R. EVID. 403 (even otherwise admissible evidence can be excluded, if its potential for prejudice outweighs its probative value). Such uncharged conduct is "relevant conduct" that may be considered under the Sentencing Guidelines to determine drug quantity . *See* U.S.S.G. §§ 1B1.3 & 2D1.1.

Therefore, Hernandez is not entitled to relief on this claim of ineffective assistance of counsel.

### d. *Failure to make a multiple conspiracies argument*

*i.* *Arguments of the parties*. The last contention that Hernandez asserted and briefed prior to the evidentiary hearing was his contention that his counsel was ineffective for failing to assert that the evidence showed multiple conspiracies instead of the single

conspiracy with which Hernandez was charged. More specifically, Hernandez argues that the evidence showed only a series of buyer-seller relationships between himself and the informants, not an agreement among the alleged co-conspirators. He also contends that, in the totality of the circumstances, the evidence did not demonstrate a single conspiracy. He contends that, although he urged trial counsel to raise the issue of multiple conspiracies, counsel failed to do so. As a result, his limited culpability was not properly demonstrated. The government responds that whether or not Hernandez ever raised the issue with his counsel is a fact issue to be determined after the evidentiary hearing.

*ii.* ***Pertinent facts***. At the evidentiary hearing, Hernandez testified that he asked Mr. Trevino to pursue a "multiple conspiracies" theory, which was not done. Mr. Trevino agreed that Hernandez brought several issues to his attention, but that he did not recall that Hernandez ever raised the issue of single or multiple conspiracies either before or during trial. The court will assume, for the sake of argument, that Hernandez did raise the issue or that, in light of the testimony of one of the cooperating witnesses, Mr. Taylor, regarding conduct during a different time frame, counsel could have raised the issue in light of evidence at trial.

*iii.* ***Analysis***. Again, "'[r]easonable performance of counsel includes an adequate investigation of facts, consideration of viable theories, and development of evidence to support those theories.'" *Lyons*, 403 F.3d at 594 (8th Cir. 2005) (quoting *Foster*, 9 F.3d at 726). However, even assuming that counsel was "deficient" in failing to raise a single conspiracy-multiple conspiracies issue at trial, the court cannot find that Hernandez was "prejudiced" by that failure. *See Boysiewick*, 179 F.3d at 620 (courts "do not . . . need to address the performance prong if petitioner does not affirmatively prove prejudice") (citing *Pryor*, 103 F.3d 710).

"'Whether the government's proof at trial established only a single conspiracy or multiple conspiracies is a question of fact, which [appellate courts] review for clear error.'" *United States v. Smith*, 450 F.3d 856, 860 (8th Cir. 2006) (quoting *United States v. Benford*, 360 F.3d 913, 914 (8th Cir. 2004)). Moreover,

> "A single conspiracy is composed of individuals sharing common purposes or objectives under one general agreement." *United States v. Morales*, 113 F.3d 116, 118 (8th Cir. 1997) (internal quotations omitted). "A single conspiracy may exist even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions." *United States v. Contreras*, 283 F.3d 914, 916 (8th Cir. 2002) (internal quotation omitted). Further, the agreement need not be explicit, but may be tacit, based upon the actions of the defendant. *United States v. Adams*, 401 F.3d 886, 893-94 (8th Cir. 2005).
>
> In determining whether a single conspiracy was proven by the evidence adduced at trial, we consider the totality of the circumstances, including "the nature of the activities involved, the location where the alleged events of the conspiracy took place, the identity of the conspirators involved, and the time frame in which the acts occurred." *Id.* at 838-39; *United States v. Morales*, 113 F.3d 116, 119 (8th Cir. 1997); *see also United States v. Radtke*, 415 F.3d 826, 838 (8th Cir. 2005) (holding a single conspiracy exists when there exists one overall objective to perform various functions to achieve the purposes of the conspiracy).

*Smith*, 450 F.3d at 860-61. Considering the relevant factors, the court concludes that there was overwhelming evidence that Hernandez conspired with a reasonably cohesive group of persons, in a limited geographical area, almost continuously within the time frame alleged, to distribute methamphetamine. Thus, Hernandez simply was not prejudiced by counsel's failure, if any, to assert that there were multiple conspiracies, rather than a single conspiracy.

Hernandez is not entitled to relief on this claim of ineffective assistance of counsel.

### e.  *Inadequate advice concerning alternatives to trial*

As mentioned above, upon a query from the court, the government conceded that, in addition to the grounds for relief stated in Hernandez's January 6, 2006, *pro se* § 2255 motion, as supplemented by counsel, the evidence presented at the evidentiary hearing fairly presented a claim of ineffective assistance of trial counsel in failing to advise Hernandez adequately about the benefits and consequences of going to trial versus pleading guilty, either with or without a plea agreement. Owing to the circumstances in which the issue was recognized, there are no arguments of the parties to summarize on this issue. Thus, the court turns directly to analysis of this claim.

### i.  *Applicable standards*.

First, although the government conceded that this claim was fairly presented on the record at the evidentiary hearing, the court notes that this claim was not presented on direct appeal, and as such, is procedurally default. Thus, the court must first determine whether or not there is "cause and prejudice" to excuse the procedural default and to allow the court to consider the claim on collateral review. *See Johnson*, 278 F.3d at 844 (("In order to obtain collateral review of a procedurally defaulted issue, [a § 2255 movant] must show 'either cause and actual prejudice, or that he is actually innocent.'") (quoting *Bousley*, 523 U.S. at 622, with citations omitted); *Ramey*, 8 F.3d at 1314 (§ 2255 relief is not available to correct errors which could have been raised at trial or on direct appeal, absent a showing of "cause and prejudice," or a showing that the alleged errors were fundamental defects resulting in a complete miscarriage of justice). As noted above, "ineffective assistance of counsel" may constitute the "cause and prejudice" that must be shown to resuscitate a procedurally defaulted claim. *See Becht*, 403 F.3d at 545. Here, it is clear that appellate counsel did not present the issue on direct appeal, establishing the necessary "cause," and Hernandez was, at least

arguably, "prejudiced" thereby, because there is, at least arguably, a showing that the alleged error "'worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions,'" because he received a longer sentence than he would have received by pleading guilty. *Johnson*, 278 F.3d at 844 (quoting *Frady*, 456 U.S. at 170). Therefore, the court will consider the merits of this claim.

On appeal of a decision of this court granting relief on a similar claim of a state prisoner pursuant to 28 U.S.C. § 2254, the Eighth Circuit Court of Appeals recognized that "[t]he Supreme Court has long held that *Strickland* applies to ineffective assistance claims arising out of the plea bargaining process." *Wanatee v. Ault*, 259 F.3d 700, 703 (8th Cir. 2001) (affirming *Wanatee v. Ault*, 39 F. Supp. 2d 1164 (N.D. Iowa 1999) (*Wanatee I*), and *Wanatee v. Ault*, 101 F. Supp. 2d 1189 (N.D. Iowa 2000) (*Wanatee II*), and citing *Hill v. Lockhart*, 474 U.S. 52, 58 (1985)). Thus, the question is, how does a defendant satisfy the two prongs of the *Strickland* analysis for such a claim?

In *Wanatee I*, this court "conclude[d] that failure to advise a criminal defendant of the relevant law is 'deficient performance' sufficient to satisfy the first prong of the 'ineffective assistance' analysis." *Wanatee I*, 39 F. Supp. 2d at 1172 (citing, *inter alia*, *Hill*, 474 U.S. at 62 (White, J., concurring), which stated, "The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the *Strickland* analysis ⋯ as such an omission cannot be said to fall within 'the wide range of professionally competent assistance' demanded by the Sixth Amendment," in turn quoting *Strickland*, 466 U.S. at 690). This court also concluded that the fact that a defendant did not appear to *want* to plead guilty, rather than go to trial, was no impediment to an "ineffective assistance" claim that he was improperly advised about whether or not to go to trial or to plead guilty. *Id.* More specifically,

> What a criminal defendant wants or does not want is not
> relevant to counsel's duty to inform the defendant of the law
> applicable to the defendant's case, so that the defendant can
> evaluate a plea offer. *See Hill*, 474 U.S. at 62, 106 S. Ct. 366
> (White, J., concurring) (recognizing counsel's duty to inform
> a criminal defendant of relevant law). Nor are there any
> "'distorting effects of hindsight,'" see Report and
> Recommendation at p. 20 (quoting *Strickland*, 466 U.S. at
> 689, 104 S. Ct. 2052), in the evaluation of trial counsel's
> performance resulting from the outcome of [the defendant's]
> prosecution that apply to the deficiency [the defendant] has
> actually alleged, because the duty to provide advice concerning
> applicable law is independent of any outcome.

*Wanatee I*, 39 F. Supp. 2d at 1172.

In its decision on appeal in *Wanatee*, the Eighth Circuit Court of Appeals explained the "prejudice" prong of the analysis of a claim of ineffective assistance during the plea process as follows:

> The prejudice inquiry in such cases "focuses on whether
> counsel's constitutionally ineffective performance affected the
> outcome of the *plea process*." [*Hill*, 474 U.S.] at 59, 106 S.
> Ct. 366 (emphasis added). Moreover, a large body of federal
> case law holds that a defendant who rejects a plea offer due to
> improper advice from counsel may show prejudice under
> *Strickland* even though he ultimately received a fair trial. *See
> Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995)
> (collecting cases). To establish prejudice under such
> circumstances, the petitioner must show that he would have
> accepted the plea but for counsel's advice, and that had he
> done so he would have received a lesser sentence. *Id.*

*Wanatee*, 259 F.3d at 703-04.

***ii.*** ***Application of the standards***. Applying these standards to Hernandez's claim of ineffective assistance of counsel concerning the alternatives of pleading guilty or going

to trial, the court finds, first, that the record from the evidentiary hearing plainly shows that Hernandez's counsel did not adequately advise him of the law applicable to his consideration of whether to go to trial, plead guilty without a plea agreement (*i.e.*, "straight up"), plead guilty with a "cooperation" plea agreement, or plead guilty with a "non-cooperation" plea agreement. *See Wanatee I*, 39 F. Supp. 2d at 1172 (counsel is "deficient" for purposes of an "ineffective assistance" claim if counsel does not adequately advise the defendant of the law applicable to his circumstances, including plea and trial alternatives). As the court found above in this case, defense counsel has a duty to explain to a criminal defendant the likely sentencing range under the Sentencing Guidelines under each of these scenarios. Just as plainly, Mr. Trevino did not fulfill that duty. The record does not show that Mr. Trevino ever made specific calculations of Hernandez's likely Guidelines sentence under any of the possible scenarios, and that if he did make such calculations, he did not convey those calculations to Hernandez so that Hernandez could properly evaluate his options.

More specifically, instead of providing calculations with the necessary specificity, counsel testified that he provided Hernandez only with "generalities" about his possible sentence, based on "the totality of the case," including a comparison with sentences of alleged co-conspirators and Hernandez's alleged role as a leader in the conspiracy, as indicated by the government's discovery file. Providing only such "generalities" does not approach the level of sophistication that could reasonably be expected of counsel in applying the United States Sentencing Guidelines to the circumstances of a particular defendant. This is so, even without the benefit of "hindsight" showing that Hernandez received a sentence at least half again as long as the sentence his counsel had estimated that he would receive using counsel's "generalities." At the time that Hernandez was preparing for trial, the "open" discovery file reasonably—indeed, plainly—raised the potential for

enhancements for a large drug quantity, a leadership role, and possession of a firearm in the course of the offense, as well as the particular consequences of going to trial, including the loss of a reduction for acceptance of responsibility and a possible enhancement for obstruction of justice. *Id.* (the determination must be made without the "distorting effects of hindsight"). Defense counsel does not have to be "right" about all of his or her calculations, of course, *see, e.g., United States v. Granados*, 168 F.3d 343, 345 (8th Cir. 1999) (*per curiam*) (the defendant's reliance on an attorney's mistaken impression about the possible length of sentence was insufficient to render a plea involuntary as long as the court informed the defendant of the maximum possible sentence), but counsel cannot fail to make *any* specific calculations and cannot overlook enhancements or reductions that are reasonably likely to be applicable to the particular defendant based on the information available to counsel and still be found to have adequately advised a criminal defendant of the relevant law. *Wanatee I*, 39 F. Supp. 2d at 1172 (stating this standard for the "deficient performance" prong of a claim of ineffective assistance in the plea process); *accord Hill*, 474 U.S. at 62 (White, J., concurring) ("The failure of an attorney to inform his client of the relevant law clearly satisfies the first prong of the *Strickland* analysis ⋯ as such an omission cannot be said to fall within 'the wide range of professionally competent assistance' demanded by the Sixth Amendment.'") (quoting *Strickland*, 466 U.S. at 690).

Moreover, the fact that Hernandez appeared to counsel to *want* to go to trial and "to fight it out" is irrelevant, where Hernandez was not properly advised of the consequences of going to trial versus pleading guilty. *Wanatee I*, 39 F. Supp. 2d at 1172. Similarly, the fact that Hernandez did not appear to *want* to provide substantial assistance is irrelevant, because Hernandez could have pleaded guilty either without any plea agreement or with a "non-cooperation" plea agreement. *Cf. id.*

Thus, counsel's performance in this case was "deficient," and Hernandez has satisfied the first prong of the "ineffective assistance" analysis.

In order to obtain relief on this claim, however, Hernandez must also show that he was "prejudiced" by counsel's deficient performance. *See Wanatee*, 259 F.3d at 703-04; *accord Ledezma-Rodriguez*, 423 F.3d at 836; *Davis*, 423 F.3d at 877. Hernandez has also made that showing here, even though he received a fair trial, because he has shown that he would have accepted the plea but for counsel's advice, and that had he done so, he would have received a lesser sentence. *Wanatee*, 259 F.3d at 703-04 (even a defendant who received a fair trial can show prejudice in the plea process if he makes these two showings). This determination requires explanation.

First, it is a simple matter to conclude that Hernandez has shown that he would have received a "lesser sentence" if properly advised and if he had chosen to plead guilty instead of choosing to go to trial. *Id.* (to prove "prejudice," the defendant must prove, *inter alia*, that he would have received a lesser sentence). At a minimum, Hernandez would not have received an enhancement for "obstruction of justice," because he would not have testified at trial, falsely or otherwise,[6] and he would have received a reduction for "acceptance of responsibility." Thus, the reduction of his offense level from 40 to 35 based on these adjustments would have resulted in a Sentencing Guidelines range for criminal history category III, under the Guidelines in effect at the time, of 210 to 262 months of imprisonment, which is considerably less than the 360 months of imprisonment actually imposed.

---

[6] Judge Melloy's determination that Hernandez testified falsely at trial was the sole basis for imposition of the "obstruction of justice" enhancement in this case.

The somewhat more complicated question is whether or not Hernandez, subjectively, would have accepted the plea but for counsel's advice. *Id*. This is a finding of fact, reviewed for clear error. *Id*. at 704. What is required, however, is not certainty, but "likelihood," *i.e.*, a "'reasonable probability'" that Hernandez would have accepted a plea over going to trial. *See Wanatee II*, 101 F. Supp. 2d at 1199-1200 (quoting *Strickland*, 466 U.S. at 695). Hernandez testified at the evidentiary hearing that, had he been advised of the possible two-level shift for obstruction of justice if he went to trial, he "probably" would have accepted a guilty plea, because such a two-level enhancement over the fourteen-year sentence he was otherwise expecting would have "hurt."

Hernandez's testimony is not the end of the matter, because "[t]he claimant must make [this] showing with something more than self-serving statements; instead, he 'must present credible, non-conclusory evidence that he would have pled guilty had he been properly advised.'" *Id*. at 1203-04 (quoting *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995)). Thus, Hernandez's after-the-fact assertions that he would have accepted the plea offer, if properly advised on the law, are not enough. *Id*. at 1206.

In *Wanatee*, the court found the necessary corroborating, "credible, non-conclusory evidence" that the defendant would have pleaded guilty, had he been properly advised, from the following circumstances: (1) the defendant mounted essentially a "legal" defense—intoxication—which would only have reduced his offense from first-degree murder to second-degree murder, instead of asserting his "innocence," suggesting that he would have accepted the plea offer to the lesser charge as a "best case scenario"; and (2) the great disparity in sentences between the proffered plea agreement to plead guilty to second-degree murder, which included the possibility of parole, and first-degree murder, which carried a mandatory life sentence without possibility of parole, so that accepting the plea offer, if properly advised of the consequences of the felony-murder rule

in his case, was the only logical choice. *Id.* at 1206-07. The circumstances here are somewhat different. Hernandez does continue to assert that he is "innocent" of any conspiracy, and the disparity in sentences between counsel's "general" estimate of fourteen years for pleading guilty and a two level enhancement for obstruction of justice if he went to trial is not nearly as great as the disparity in sentences in *Wanatee*. Nevertheless, the court finds that the circumstances in addition to Hernandez's present assertions that he "probably" would have pleaded guilty, if properly advised, *do* provide credible, non-conclusory evidence that Hernandez would have entered such a guilty plea.

First, while Hernandez continues to assert that he was not involved in any conspiracy—the offense with which he was charged—because he was only involved in buyer-seller relationships with the alleged co-conspirators, he *does* admit that he was involved in various drug transactions. Thus, Hernandez's profession of "innocence," like Wanatee's, is a profession of "innocence" of a particular level or kind of offense, not a profession of innocence of any wrongdoing, and his admission of criminal conduct does reasonably suggest that he would have pleaded guilty to obtain a lesser sentence, if properly advised. Second, while the disparity between the sentence that Hernandez's counsel led him to believe was likely and the sentence he would have incurred above that estimate with a two-level enhancement for obstruction of justice is not so great as the disparity at issue in *Wanatee*, it is not insignificant. Counsel led Hernandez to believe that his likely sentence was fourteen to twenty years, whether he pleaded guilty or went to trial, and also led him to believe that testifying at trial would make no difference. Even using only "generalities" similar to those counsel used, it should have been apparent that a possible two-level enhancement for obstruction of justice could result in an increase in

three to almost five years in the estimated sentenced.[7]  Moreover, when an additional three-level change for loss of a reduction for acceptance of responsibility is also factored in—as it would have been, had Hernandez been properly advised—the resulting disparity is a still more significant ten to twelve years.[8]  While perhaps not the "gift" that the lesser sentence possible for Wanatee was, if Wanatee had been properly advised to plead guilty, *see id.*, the lesser sentence that Hernandez might have expected from pleading guilty, even with counsel's miscalculations, is still sufficiently less to make pleading guilty, even without a cooperation agreement, Hernandez's most reasonable choice.  *Cf. id.* (the possible sentence if the defendant had pleaded guilty made such a guilty plea the only logical choice).

Thus, the court finds that Hernandez has proved both "deficient performance" and "prejudice" on this claim of ineffective assistance of counsel, and he is, therefore, entitled to some relief on this claim.

### D.  The Remedy

The court's determination that Hernandez is entitled to relief on his claim that counsel provided ineffective assistance in failing to advise Hernandez adequately about the

---

[7]For example, counsel's estimated sentence of fourteen to twenty years correlates approximately to the sentencing range of 168 to 210 months for level 33, criminal history category III, under the Sentencing Guidelines applicable at the time.  With a two-level enhancement for obstruction of justice, the sentencing range for level 35, criminal history category III, would have been 210 to 262 months, a difference of three-and-one-half years (comparing bottom ends) to four-and-one-third years (comparing top ends).

[8]This estimate compares the sentencing range of 168 to 210 months for level 33, criminal history category III, to the range of 292 to 365 months for level 38, criminal history category III, under the Sentencing Guidelines applicable at the time.

benefits and consequences of going to trial versus pleading guilty, either with or without a plea agreement, begs the question, what kind of relief? The government sought leave to brief that question when the court raised it at the conclusion of the evidentiary hearing, and the court established a schedule for supplemental briefing on that issue. The government filed its brief on remedies on August 11, 2006. Hernandez filed a responsive brief on August 25, 2006.

### 1.    *Arguments of the parties*

In its post-hearing brief on remedies,[9] the government noted that § 2255 itself is not very helpful, because it states only that, if the court determines that a prisoner is entitled to relief, "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may be appropriate." 28 U.S.C. § 2255. Nevertheless, the government asserts that other authorities suggest that the remedy chosen should be tailored to the injury suffered from the constitutional

---

[9]Although the government had not requested and the court had not authorized the parties to address such issues in post-hearing briefing, and the government expressly waived oral arguments on the merits at the end of the evidentiary hearing, nearly half of the government's post-hearing brief is devoted to additional citations of authorities concerning the deferential standard applicable to counsel's performance, and particularly the importance of avoiding the distorting effects of hindsight, and the question of what evidence is sufficient to establish that a defendant would have pleaded guilty if adequately advised. The court believes that it has adequately addressed these issues in its ruling and will not comment further on the government's post-hearing arguments on these issues. Interestingly, the government's post-hearing brief does not address one of the issues that the court expressly requested that the parties discuss in their post-hearing briefs, the question of whether or not any resentencing would be under the mandatory United States Sentencing Guidelines in effect at the time that the defendant was originally sentenced, if the court determined that resentencing of the defendant is the appropriate remedy. *See* Order of July 28, 2006 (docket no. 134) (establishing the issues and deadlines for post-hearing briefing).

violation and should not unnecessarily infringe upon competing interests, citing, *inter alia*, *Riggs v. Fairman*, 178 F. Supp. 1141 (C.D. Cal. 2001). Here, the government contends that Hernandez expressed no interest in entering a guilty plea during the prosecution phase of his case, so that no plea agreement was offered. Under these circumstances, the government contends that "tailoring" the remedy to address any constitutional injury that does not unnecessarily infringe upon competing interests is a challenge. The government contends that it is not appropriate here to resentence the defendant as if he had pleaded guilty in 2001, because the evidence does not show that he would have pleaded guilty had he been properly advised, so that he has not proved "prejudice."[10]

In his responsive brief on remedies, Hernandez argues that resentencing is among the broad range of remedies available under § 2255. He, therefore, asks that he be resentenced as if he had entered a guilty plea, as this would have been his decision, had he been properly advised. He contends that this remedy is in keeping with the remedy in other cases involving ineffective assistance of counsel. Contrary to the government's assertions in its post-hearing brief, Hernandez contends that he has established ineffective assistance of counsel in failing to provide him with proper advice about pleading guilty or going to trial, and that he has established that he would have pleaded guilty, had he been properly advised. In a resentencing, he argues that the Sentencing Guidelines must be

---

[10]The court, on the other hand, found that Hernandez had, indeed, been "prejudiced," because he was subjected to a longer sentence than he would have received had he pleaded guilty. The court finds that the government's argument not only mischaracterizes the standard for determining "prejudice" on this claim, but fails to address entirely the question of the appropriate remedy where the court has found both "deficient performance" and "prejudice" arising from counsel's failure to advise the defendant properly of the consequences of going to trial versus pleading guilty, including pleading "straight up" with no plea agreement.

treated as merely advisory, owing to the Supreme Court's decision in *Booker*. He also argues that a resentencing hearing is required, because the court must now consider the 18 U.S.C. § 3553(a) factors, where the Sentencing Guidelines must be treated as merely advisory, and those factors were not presented to the court at his original sentencing hearing. Still more specifically, he asserts that he should receive a reduction for acceptance of responsibility and should not be subjected to an enhancement for obstruction of justice, but that other potential enhancements and reductions should be considered along with the § 3553(a) factors.

## 2. *Analysis*

Section 2255 expressly provides that a defendant asserting that his or her sentence is illegal may move the sentencing court "to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. The court agrees with the government that this statutory definition of appropriate remedies is not particularly helpful here, although it does make clear that resentencing is an available remedy.

On the other hand, the Eighth Circuit Court of Appeals has explained that "[s]ection 2255 affords the court broad and flexible power in correcting invalid convictions or sentences." *Gardiner v. United States*, 114 F.3d 734, 736 (8th Cir. 1997) (citing *Andrews v. United States*, 373 U.S. 334, 339 (1963)); *United States v. Harrison*, 113 F.3d 135, 137 (8th Cir. 1997).[11] More specifically, "[a] remedy that seems appropriate is to put § 2255 defendants in the same position as defendants on direct appeal by permitting resentencing,

---

[11]Resentencing as a remedy under § 2255 does not implicate double jeopardy, because "'the pronouncement of a sentence has never carried the finality that attaches to an acquittal.'" *Gardiner*, 114 F.3d at 736 (quoting *United States v. DiFrancesco*, 449 U.S. 117, 133 (1980)). Where defendants put their convictions before the court by bringing collateral actions, "[t]hey cannot claim to have any legitimate expectation of finality of their sentences . . . ." *Id.*

and to impose a sentence that would have been rendered but for the challenged error."
*Harrison*, 113 F.3d at 137 (internal citation omitted) (citing *United States v. Hillary*, 106
F.3d 1170, 1172 (8th Cir. 1997)). In this case, putting Hernandez in the same position as
defendants on direct appeal, and imposing a sentence that would have been rendered but
for the challenged error of failure to advise him adequately of the benefits and
consequences of going to trial or pleading guilty, either with or without a plea agreement,
would require imposition of a sentence based on a guilty plea, rather than a sentence based
on a conviction after a jury trial.

More specifically still, the court agrees with the government that there is little or
no evidence that Hernandez would have agreed to cooperate with the government. Indeed,
there is little or no evidence that he would have entered into any kind of plea agreement,
even a "non-cooperation" plea agreement, where Hernandez continues to dispute many of
the facts of the offense, such as the scope of the conspiracy, and the basis for any
sentencing enhancements. The court found above, in its analysis of the merits of this
claim, that Hernandez, subjectively, would have accepted a guilty plea but for counsel's
advice. Thus, Hernandez must be resentenced based on a guilty plea made "straight up,"
with no plea agreement.

This conclusion leads the court to the question of what version of the United States
Sentencing Guidelines should apply to Hernandez's resentencing on a "straight up" guilty
plea. A correlate to the principle that the court should impose a sentence that would have
been rendered but for the challenged error is that the sentence should be imposed under
the law in effect at the time. In this case, that law included not only a prior version of the
United States Sentencing Guidelines, but a version of the United States Sentencing
Guidelines that was still mandatory. Hernandez, nevertheless, asserts that the Eighth
Circuit Court of Appeals has recognized that resentencings post-*Booker* must treat the

Sentencing Guidelines as advisory, citing *United States v. Borer*, 412 F.3d 987, 995 (8th Cir. 2005), *United States v. Pirani*, 406 F.3d 543 (8th Cir. 2005), *United States v. Huber*, 404 F.3d 1047 (8th Cir. 2005), and *United States v. Gleich*, 397 F.3d 608, 615 (8th Cir. 2005).

Although the cases cited by Hernandez do each state that the defendant should be resentenced under the advisory guidelines scheme established by *Booker*, the problem with those cases for present purposes is that they all involved resentencing as the remedy *upon direct appeal*, not upon subsequent collateral attack. *See Borer*, 412 F.3d at 995 (upon direct appeal of incorrect application of the Sentencing Guidelines, remanding for resentencing in light of *Booker*); *Pirani*, 406 F.3d at 543 (considering the impact of *Booker* on cases on direct appeal); *Huber*, 404 F.3d at 1064 (remanding a case on direct appeal for "resentencing consistent with this opinion and the current state of the sentencing guidelines"); *Gleich*, 397 F.3d at 615 (upon resentencing on remand after direct appeal, the district court was directed to "apply the advisory regime outlined in [*Booker*]"). Moreover, the Eighth Circuit Court of Appeals has expressly held that *Booker* is not retroactively applicable to cases on collateral review. *See Never Misses A Shot v. United States*, 413 F.3d 781, 783-84 (9th Cir. 2005) (*per curiam*). Thus, Hernandez has not cited any authority that requires application of the Sentencing Guidelines as if they were only advisory on resentencing as a remedy under § 2255.

On the other hand, in *Ferrara v. United States*, 372 F. Supp. 2d 108, 113 (D. Mass. 2005), the United States District Court for the District of Massachusetts reiterated its conclusion that resentencing as a remedy under § 2255 for a due process violation was "governed by the law as it now exists after the Supreme Court's decision in *United States v. Booker*, ___ U.S. ___, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005)." *Ferrara*, 372 F. Supp. 2d at 113 (citing its prior decision, published later, in the case, *Ferrara v. United*

*States*, 384 F. Supp. 2d 384, 433-35 (D. Mass. 2005)). Specifically, the court found that it had to determine "the correct, present Guidelines range and also conside[r] the various possible Guidelines ranges and the § 3553(a) factors." *Id.* The court so held, despite its recognition of the goal of devising a § 2255 remedy that would, as much as possible, restore the defendant to the circumstances that would have existed had there been no constitutional error. *Id.* In its prior decision in the case so holding, the court had adopted the government's position that *Teague v. Lane*, 489 U.S. 288 (1989), did not bar application of the "new rule" in *Booker* to the defendant's resentencing, because relief in that case was not premised on a "*Booker* violation" in the form of judicial fact-finding at sentencing, but on a violation of the defendant's constitutional due process rights relating to the failure of the government to disclose exculpatory information to him. *Ferrara*, 384 F. Supp. 2d at 435. The government reasoned that, in such circumstances, it "'seem[ed] clear that the Court cannot apply the Guidelines in a manner that has now been determined to be unconstitutional. Rather, as the second portion of *Booker* instructs, the Guidelines would be advisory.'" *Id.* (quoting the Government's Brief).

This court agrees that, on resentencing as a remedy under § 2255 for a constitutional violation that was *not* premised solely on a "*Booker* violation," it would be inappropriate for the court to apply the Guidelines in a manner that the Supreme Court has determined to be unconstitutional. In this case, the only alleged constitutional violation that the court has found to warrant relief is the "ineffective assistance of counsel" claim based on counsel's failure to advise Hernandez adequately about the benefits and consequences of going to trial versus pleading guilty, either with or without a plea agreement. This claim has nothing whatsoever to do with judicial fact-finding during sentencing, and thus, does not implicate *Booker* in any way. Thus, the court must apply

the Guidelines as advisory, although the Guidelines that are applicable are otherwise the ones in place at the time that Hernandez was originally sentenced.

Somewhat paradoxically, this conclusion could result in "backdoor" relief to Hernandez on his failed claims of "*Booker* errors." However, the court may still find by the greater weight of the evidence facts that affect Hernandez's Guidelines sentencing range, as long as the court treats the Guidelines as advisory. *See, e.g., United States v. Sandoval-Rodriguez*, ___ F.3d ___, ___, 2006 WL 1889292, *5 (8th Cir. July 11, 2006) ("District courts continue to apply Guidelines enhancements based on judge-made fact-findings found by a preponderance of the evidence, as long as the Guidelines are treated as advisory."). Thus, the net effect of treating the Guidelines as advisory on resentencing will not necessarily result in a sentence that is different from what Hernandez would receive on resentencing if the court treated the Guidelines in effect at the time as mandatory.

The court finds, further, that Hernandez's corrected sentence will be different from his original sentence in only three respects. First, the court finds that, because Hernandez must be resentenced on the basis of entry of a guilty plea, Hernandez is entitled to a full three-level reduction in his Sentencing Guidelines sentencing range for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1, based on a timely guilty plea, rather than going to trial. This adjustment to Hernandez's Guidelines calculation reduces his offense level from 40 to 37. Second, the court finds that, had Hernandez been properly advised, he would have pleaded guilty, thus avoiding the trial testimony that Judge Melloy found obstructed justice. Therefore, the two-level enhancement for obstruction of justice pursuant to U.S.S.G. § 3C1.1 is not appropriate on resentencing. This adjustment to Hernandez's Guidelines calculation reduces his offense level to 35. The court finds, however, that there is no basis on which to reject Judge Melloy's drug quantity

determination or the enhancements of Hernandez's sentence for a leadership role in the offense and possession of a dangerous weapon in the course of the offense. Thus, the reduction of Hernandez's offense level from 40 to 35 based on these adjustments results in a Sentencing Guidelines range for criminal history category III, under the Guidelines in effect at the time, of 210 to 262 months of imprisonment. Third, the court must now treat the Guidelines range as advisory and determine whether to sentence Hernandez within this Guidelines range, and if so where in that range, or whether to sentence him, instead, to a non-Guidelines sentence, based on § 3553(a) factors. *See Ferrara*, 372 F. Supp. 2d at 113. The court will set a sentencing hearing to make the third determination and to enter the corrected sentence.

### E. Certificate Of Appealability

Although the court has granted relief to Hernandez on one of his claims, if the government appeals that ruling, Hernandez may wish to cross-appeal the denial of relief on his other claims. Hernandez may also wish to appeal the remedy and the corrected sentence that the court will ultimately impose. Thus, the court will consider whether Hernandez is entitled to a certificate of appealability on the claims upon which the court denied relief and on the remedy for the one claim upon which the court finds that relief is warranted.

Whether or not a certificate of appealability should issue is controlled by 28 U.S.C. § 2254(c)(1), which provides, in pertinent part, as follows:

> **(c)(1)** Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
> * * *
> **(B)** the final order in a proceeding under section 2255.

28 U.S.C. § 2255(c)(1)(B). To obtain a certificate of appealability on his claims for § 2255 relief, defendant Hernandez must make "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2255(c)(2); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Mills v. Norris*, 187 F.3d 881, 882 n.1 (8th Cir. 1999); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Ramsey v. Bowersox*, 149 F.3d 749 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), *cert. denied*, 525 U.S. 834 (1998). "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox*, 133 F.3d at 569. Moreover, the United States Supreme Court reiterated in *Miller-El* that "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. Ct. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The court finds that defendant Hernandez has not made a substantial showing of the denial of a constitutional right on any of the claims upon which the court has denied relief, 28 U.S.C. § 2255(c)(2), and that no reasonable jurists would find this court's assessment of those constitutional claims debatable or wrong. *Miller-El*, 537 U.S. at 338. Therefore, Hernandez does not make the requisite showing to satisfy § 2253(c) as to any of the claims upon which the court has denied relief, and a certificate of appealability will not issue on any of the claims upon which the court has denied Hernandez relief. *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). On the other hand, the court finds that Hernandez has made a substantial showing of the denial of a constitutional right on the claim upon which the court has granted relief, 28 U.S.C. § 2255(c)(2), and that reasonable jurists

could find this court's assessment of the appropriate remedy for that constitutional violation debatable or wrong. *Miller-El*, 537 U.S. at 338. Therefore, a certificate of appealability will issue on *the remedy* that the court has selected for the ineffective assistance of counsel in failing to advise Hernandez properly on the alternatives of pleading guilty or going to trial.

## III. CONCLUSION

Upon the foregoing, the court finds that only one of Hernandez's claims warrants relief under 28 U.S.C. § 2255. That claim is the one that was not fairly presented until the evidentiary hearing, Hernandez's claim that his trial counsel provided ineffective assistance in failing to advise him adequately about the benefits and consequences of going to trial versus pleading guilty, either with or without a plea agreement. The court finds that the appropriate remedy for such ineffective assistance of counsel is to resentence Hernandez pursuant to a "straight up" guilty plea, with the adjustments to the Guidelines sentence calculations indicated above.

THEREFORE,

1.      Hernandez's June 25, 2003, *pro se* Petition Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (docket no. 97) by defendant Rogelio Hernandez, Jr., as supplemented by counsel on January 6, 2006 (docket no. 121), after initial review by the court, and as further supplemented in the course of an evidentiary hearing on the claims presented, is **granted in part and denied in part**.

a.      The motion is **granted** as to Hernandez's claim that his trial counsel provided ineffective assistance in failing to advise him adequately about the benefits

and consequences of going to trial versus pleading guilty, either with or without a plea agreement; but

      b.     The motion is **otherwise denied**.

2.     The court finds that the appropriate remedy for the ineffective assistance of counsel found by the court is to resentence Hernandez on the basis of a guilty plea under the versions of the applicable statutes and United States Sentencing Guidelines in effect at the time of his original sentencing, with the adjustments to the Guidelines sentence calculations indicated above, with the exception that the United States Sentencing Guidelines must now be treated as advisory.

3.     A hearing for correction of sentence is scheduled for **9:00 a.m. on Thursday, September 21, 2006,** at the Federal Courthouse in Sioux City, Iowa. The United States Marshal is directed to transport Hernandez to Sioux City for this hearing.

4.     A certificate of appealability pursuant to 28 U.S.C. § 2253(c) is **denied** as to all claims in Hernandez's § 2255 motion upon which relief has been denied, but **granted** on *the remedy* that the court has selected for the ineffective assistance of counsel in failing to advise Hernandez properly on the alternatives of pleading guilty or going to trial.

**IT IS SO ORDERED.**

**DATED** this 31st day of August, 2006.

_Mark W. Bennett_
_____
MARK W. BENNETT
CHIEF JUDGE, U. S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA